WILLIAM F. MINSTER, Respondent, v. THE CITIZENS' RAILWAY COMPANY, Appellant.

St. Louis Court of Appeals, March 21, 1893.

1. **Street Railways**: CLAIM OF CONDUCTOR AGAINST THIRD PERSON: EFFECT OF CONTRIBUTORY NEGLIGENCE OF GRIPMAN.  When the negligence of a gripman of a street railway car in the operation thereof and the negligence of a third person concur in causing injury to the conductor of the car, and the gripman is under the direction and control of the conductor, his negligence will be imputed to the conductor so as to debar the latter from recovering for the injury from such third person.

2. **Negligence**: RES IPSA LOQUITUR.  When an accident is such as in the ordinary course of things does not happen, if the person having the management of the cause producing it uses proper care, it affords reasonable evidence, in the absence of explanation by such third person, of negligence on his part.

3. **Recovery for Medical Attendance as Damages**: BURDEN OF PROOF: INSTRUCTIONS.  To justify an instruction directing the jury to allow, as damages for personal injuries, expenses incurred by the plaintiff for medical attendance, there must be evidence of some payment by the plaintiff for such attendance or of the existence of a liability on his part therefor.

*Appeal from the St. Charles Circuit Court.*—HON. W. W.
EDWARDS, Judge.

REVERSED AND REMANDED.

*Smith P. Galt,* for appellant.

No brief filed for respondent.

BIGGS, J.—The street railway of the defendant,
and also that of the St. Louis Cable & Western rail-
way, are cable roads, and they cross each other at the
junction of Easton and Franklin avenues. The plain-
tiff was a conductor on the St. Louis Cable & Western
railway, and he received personal injuries by reason
of the grip car of his train running against the slot of
the St. Louis Cable & Western Railway Company at
the crossing of the two roads. The plaintiff claims
that the slot of the St. Louis Cable & Western Railway
Company was displaced by the negligence of the
defendant's servants, who were at the time repairing
the crossing by reconstructing its foundation. The
petition states the alleged negligence as follows: "That
on the twenty-sixth day of August, 1889, the plaintiff
was conductor on one of the cable cars of the St.
Louis Cable & Western railway going west at the
junction of said tracks; that as the grip car, which
was drawing the car on which plaintiff was conductor,
was passing said crossing, the grip of said car ran
against the slot, thereby throwing plaintiff against a
seat of the car on which he was conductor, and dislo-
cated his right shoulder, and otherwise bruised and
injured plaintiff. And plaintiff avers that said grip
was caused so to run against said slot and injure the
plaintiff by the negligence of defendant's servants, in
that they displaced the slot of the St. Louis Cable &

Western railway, so as to obstruct the passage of the grip attached to the grip car of plaintiff's train; that defendant by its servants was at said time engaged in repairing said crossing, and negligently and carelessly displaced the slot of the St. Louis Cable & Western railway track so as to obstruct the passage of the grip on said track; and defendant's said servants also negligently failed to give any notice to the persons in charge of the St. Louis Cable & Western cars of the fact of said obstruction."

The defendant denied all the allegations of the petition, and it also charged that plaintiff's injuries were the direct result of his own negligence and of the negligent operation of his train by himself and others operating it. The plaintiff denied the new matter in his reply, and upon these issues the case was tried. The plaintiff obtained a verdict for one thousand dollars. The court refused to set aside the verdict, and judgment was entered. The defendant has appealed.

The court gave the following instructions, of which the defendant complains:

"4. If the jury find from the evidence that the collision of the train, on which plaintiff was conductor, was caused by the joint negligence, or want of ordinary care, of both defendant's servants and *the gripman* on the train of which plaintiff was conductor, and without any want of ordinary care upon the part of the plaintiff (if they so find), and, if by such want of ordinary care on the part of defendant's servants and said gripman plaintiff was injured, then plaintiff is entitled to recover."

The question presented by this instruction is whether the plaintiff and his gripman were so connected as to make the negligence, if any, of the gripman that of the plaintiff. The defendant's evidence tended to prove that the plaintiff's car was,

under the circumstances, run at a reckless rate of speed over the crossing; that the gripman knew of the repairs, and had been warned of the dangerous condition of the crossing. Hence, if his alleged negligence can be imputed to the plaintiff, the instruction is wrong and was prejudicial, as the rapid rate of speed, when the defendant's evidence as to the manner of making the repairs is considered, would have authorized the inference that the slot was displaced on account of it. The general rule is that, where an injury results from two concurring causes, one party in fault is not relieved from liability although another party may have been equally culpable. Both are jointly and severally liable. *Wheeler v. City of Worcester*, 10 Allen, 591; *Congreve v. Morgan*, 18 N. Y. 84; *Chapman v. Railroad*, 19 N. Y. 341; *Ricker v. Freeman*, 50 N. H. 420; *Peck v. Neal*, 3 McLean, 22; *Mott v. Railroad*, 8 Bosw. 345; *Colegrove v. Railroad*, 20 N. Y. 492; *Barrett v. Railroad*, 45 N. Y. 628; *Webster v. Railroad*, 38 N. Y. 260. The English courts have recognized an exception to this rule, where the injured party was identified, in a juridical sense, with one of the parties causing the injury. In such cases it was held that the right of action of the person injured would not extend to the other party contributing to the injury. Applying the exception, Lord Chief Justice TENDERDEN decided in the case of *Vanderplank v. Miller*, Moody & Malkin, 169, that, where there was a collision of vessels, a shipper of goods on one could not sue the owners of the other vessel for injury to his goods, it appearing that the persons in charge of both vessels were in fault. The same rule has been applied, where passengers received injuries through the concurrent negligence of the carrier and a third person. *Thorogood v. Bryan*, 8 C. B. 115; *Catlin v. Hills*, 8 C. B. 123. The argument, upon which the exception is made to

rest, is that the shipper or passenger is so far identified with the carriage in which his goods are shipped, or he is traveling, that the want of care on the part of the persons in charge will be a defense to the other party whose negligence concurred in causing the damage. But this doctrine in its application to passengers and shippers does not seem to have for its foundation any well-established legal principle, and, therefore, it has been repudiated by a majority of the American courts. *Chapman v. Railroad,* 19 N. Y. 341; *Dyer v. Railroad,* 71 N. Y. 228; *Railroad v. Steinbrenner,* 47 N. J. L. 161; *Little v. Hackett,* 33 Alb. Law Journal, 189; Whitaker's Smith on Negligence, p. 406. This conclusion has been reached on the principle that a passenger is not the master or principal of the carrier, neither has he ordinarily any control of its servants. In the case at bar the defendant's evidence tended to prove that the gripman was under the direction or control of the plaintiff. If that be true then, under all of the decisions, any act of negligence by the gripman which contributed directly to the displacement of the slot must be imputed to the plaintiff, and would necessarily prevent a recovery. Hence, the instruction as given was erroneous. *Seaman v. Koehler,* 122 N. Y. 646.

The plaintiff's fifth instruction was as follows:

"If the jury find from the evidence in this case that on the twenty-sixth day of August, 1889, the plaintiff was in the service of the St. Louis Cable & Western Railroad Company as a conductor in charge of the train of cars on which he was injured, as mentioned in the evidence; and if the jury find from the evidence that the railway of said St. Louis Cable & Western Company was crossed by the railway of the defendant Citizens' Railway Company at Twenty-eighth street and Franklin avenue or Easton avenue,

as mentioned in the evidence; and if the jury find from the evidence that on said day the train of cars, on which plaintiff was conductor, was passing over said crossing, and, whilst passing over said crossing, ran against the slot rail of either the St. Louis Cable & Western Railway Company or that of the defendant, and that thereby the plaintiff was injured; and if the jury further find from the evidence that the train of cars, on which plaintiff was such conductor, was caused to run against said slot rail of either the St. Louis Cable & Western Railway Company or the defendant by reason of such slot rail of either said St. Louis Cable & Western Railway Company or that of the defendant being out of place, and an obstruction to the passage of the train of which plaintiff was such conductor (if the jury so find); and if the jury further find from the evidence that such slot rail, against which the train of which plaintiff was such conductor so collided, was displaced by the employes of the defendant in such a manner as to cause such collision; and if the jury find from the evidence that the employes of the defendant did not use ordinary care in so displacing such slot rail; and if the jury find from the evidence that such slot rail so displaced was an obstruction to the passage of the train of which plaintiff was such conductor over said crossing; and if the jury find from the evidence that the gripman and plaintiff in charge of the train of which he was conductor were using ordinary care under all the circumstances in running their train over said crossing,—then the plaintiff is entitled to recover."

This instruction is subject to some criticism. It is drawn upon the idea that the accident was caused by the obstruction of the slot of either one road or the other, whereas the physical facts show that the cause of the accident was the closing up of the slot of the St.

Louis Cable & Western Railway Company, because
the grip of the plaintiff's car was at the point of inter-
section diverted to the slot of the defendant's road,
thus showing conclusively that the obstruction was to
the slot of the other road. Again, the jury should
have been required to find that the defendant's
servants did not use ordinary care in making the
repairs at the crossing, by reason of which the slot was
displaced. This is the issue as made by the pleadings.

It is insisted that it was error to give this instruc-
tion, for the reason that all of the testimony in the case
tended to show that the defendant's servants in con-
structing the supports for the crossing, while the
repairs were being made, used every known precaution.
It appeared that the repairs were made under the
control of the defendant's servants, and, as the work
was being done under ground, the manner in which it
was being done was exclusively within the knowledge
of the defendant's workmen. The plaintiff proved that
the accident occurred by the displacement of the slot at
the crossing; that his train was running at about half
of the usual speed, and that on account of the obstruc-
tion his train was suddenly stopped, whereby he was
thrown forward and his shoulder dislocated. This
made a *prima facie* case for the plaintiff. The general
rule is that the plaintiff must adduce some evidence of
the cause of the injury, and that it resulted from the
defendant's negligence, but "where the thing is shown
to be in the management of defendant or his servants,
and the accident is such as under the ordinary course
of things does not happen, if those who have the man-
agement use proper care, it affords reasonable evidence,
in the absence of explanation by defendant, that the
accident arose from want of proper care." *Scott v.
Dock Co.*, 11 Jur. N. S. 204; *Mullen v. St. John*, 57
N. Y. 567; *Warren v. Kauffman*, 2 Phil. 259; *Thomas*

*v. Tel. Co.*, 100 Mass. 156; *Kearney v. Railroad*, L. R. 5 Q. B. 411. Whether the defendant by its testimony fully rebutted this presumption of negligence was for the jury.

The plaintiff's sixth instruction authorized the jury, in establishing the damage, to allow "expenses, necessarily incurred for medical attention, which the plaintiff has sustained, or will hereafter sustain by reason of said injury, and directly caused thereby." There was no evidence to authorize the giving of this instruction. The physicians who attended the plaintiff testified that no charges were made against the plaintiff, and that he had paid nothing on account of medical attention. The law only aims at compensation, and to authorize a recovery for medical services the plaintiff must have paid or become liable therefor. 2 Thompson on Negligence, p. 1258. Neither was there any testimony that the plaintiff's injuries were of such a character as to require future treatment.

The plaintiff introduced evidence tending to prove that the cars on the defendant's road, which passed over the crossing every few minutes, were run at full speed. This evidence was competent in view of the defendant's contention that its servants, in constructing the foundation of the crossing, adopted all reasonable means to prevent the displacement of the slots, and that the displacement must have been produced by the unusual speed of plaintiff's car. To rebut this it was competent for the plaintiff to show the rapid rate at which the defendant's own cars were being run, for this may have been the cause of the displacement, and, if so, it was the duty of the defendant's servants, who were at work under the crossing, to have observed it, and notified the plaintiff of the danger.

For the errors in the instructions the judgment of the circuit court will be reversed, and the cause remanded. All the judges concur.